**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE, NEW JERSEY INSTITUTE OF TECHNOLOGY CHAPTER; YAHYA HABEHH; UMAIR KHAN; USMAN AHMAD KHWAJA; IBRAHEEM ALJAYEH; AHMAD JAMHOUR; FARIS QADDOURA,<br><br>Plaintiffs,<br><br>v.<br><br>NEW JERSEY INSTITUTE OF TECHNOLOGY; DAVID JONES; MARYBETH BOGER; MATTHEW GOLDEN; ANDREW CHRIST; LATOSHA WILSON; BRUCE BUKIET; TEIK LIM; KATHRYN HAGEMAN; MICHAEL DAVIS; JANE & JOHN DOES 1-10 and XYZ CORPORATIONS 1-10 (fictitious defendants),<br><br>Defendants. | Civil Action No. 2:26-cv-01771-MCA-JSA<br><br>*DOCUMENT FILED ELECTRONICALLY* |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'**
**<u>MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

**TROUTMAN PEPPER LOCKE LLP**
Michael E. Baughman, Esq.
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
215.981.4964
Michael.Baughman@troutman.com

*Attorneys for Defendants New Jersey Institute of Technology, David Jones, Marybeth Boger, Matthew Golden,*

*Andrew Christ, Latosha Wilson,*
*Bruce Bukiet, Teik Lim, Kathryn Hageman,*
*and Michael Davis*

Dated: June 17, 2026

# TABLE OF CONTENTS


I. INTRODUCTION ..................................................................................1

II. ARGUMENT........................................................................................3

A. Plaintiffs Fail to State a Claim Under Title VI. ....................................3

i. NJIT's Conditioning Recognition of Plaintiffs' Group on an Appropriate Name is Not Discrimination ..............................3

ii. The Alleged Discriminatory Comments of Two Employees are Neither Race Discrimination Nor Imputable to NJIT ..........................................................5

B. Plaintiffs' State Law Claims Also Fail.................................................7

C. Plaintiffs' First Amendment Claims Under Section 1983 Fail...........11

i. Plaintiffs Cannot Sue NJIT Under Section 1983......................11

ii. Defendants Did Not Violate any First Amendment Rights, Never Mind Clearly Established Rights Necessary to Overcome Qualified Immunity ...........................11

III. CONCLUSION....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)....................12

*D.C. v. Wesby*,
583 U.S. 48 (2018)....................14

*Daley v. Pa. Dep't of Corrections*,
1:20-CV-00023-SPB, 2024 U.S. Dist. LEXIS 143458 (W.D. Pa. Aug. 7, 2024)....................13

*Davis v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999)....................6, 9

*Estep v. Mackey*,
639 Fed. Appx. 870 (3d Cir. 2016)....................13

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998)....................5

*Healy v. James*,
408 U.S. 169 (1972)....................12

*K.J. v. J.P.D.*,
659 F. Supp.3d 471 (D.N.J. 2023)....................9

*Landau v. Corporation of Haverford College*,
780 F. Supp.3d 548 (E.D. Pa. 2025)....................10

*Lehmann v. Toys 'R' Us*,
132 N.J. 587 (1993)....................9

*Maliandi v. Montclair State Univ.*,
845 F.3d 77 (3d Cir. 2016)....................11

*Mosley v. Egg Harbor City*,
No. 22-6489, 2026 WL 884772 (D.N.J. Mar. 31, 2026)....................9

*Rivas-Villegas v. Cortesluna*,
595 U.S. 1 (2021) .......... 13

*Shepherd v. Hunterdon Development Ctr.*,
174 N.J.1 (2002) .......... 10

*StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*,
158 F.4th 1 (1st Cir. 2025) .......... 4, 6

*Taylor v. Metzger*,
152 N.J. 490 (1998) .......... 9

*Vincent C. v. Pennsbury Sch. Dist.*,
No. 24-06340-PAC, 2025 U.S. Dist. LEXIS 169830 (E.D. Pa. Sept. 2, 2025) .......... 6

**Statutes**

New Jersey Civil Rights Act .......... 7

**Other Authorities**

First Amendment .......... *passim*

Fourth Amendment .......... 13

Local Civil Rule 7.2 .......... 1

## I. INTRODUCTION

Plaintiffs' discrimination and First Amendment claims fail for a simple reason which their Memorandum of Law (ECF No. 11) ("Pl.'s Mem.")[1] largely ignores but which their First Amended Complaint (ECF No. 1, Exhibit A) ("FAC") freely admits: NJIT "indicated that NJIT will recognize the[ir] organization under a different name" FAC at ¶ 48 and told them "NJIT is ready and willing to approve your student group under an alternative approved name." *Id.* at ¶ 64. Thus, contrary to Plaintiffs' spin, this case is not about NJIT refusing to recognize their student group, denying their ability to associate with one another, or denying their ability to advocate for the issues that are important to them. Rather, it is a case about placing a reasonable condition on the official recognition of Plaintiffs' group: that they not utilize a name that falsely suggested an affiliation with a different national organization.

Conditioning recognition of a group based on use of an appropriate name is not race or national origin discrimination. Plaintiffs' Memorandum of Law, even while at times adding to and modifying what is contained in the FAC, still identifies no facts whatsoever supporting an inference of discrimination. To the contrary, their own allegations conclusively refute any such suggestion: Plaintiffs admit that their

[1] It should be noted that Plaintiffs' Memorandum of Law fails to comply with Local Civil Rule 7.2 as it is over the page limit given the font and size utilized.

group was composed of people of diverse national origins so any action against the group is not an action against a particular national origin. And they fail to explain how insisting that Plaintiffs use a non-misleading name for their group is even remotely connected to race or national origin discrimination. Instead, their real complaint is that "NJIT objected to . . . the message of advocacy on behalf of Palestinian liberation." Pl.'s Mem. at 1. Even if true, that is a political disagreement, not race or national origin discrimination, which is a free speech claim.

And that free speech claim fares no better. Plaintiffs fail to show any decision that curtailed their right to advocacy or their ability to associate with whom they pleased. To the contrary, they admit that NJIT permitted them to be recognized and to say what they wanted, so long as they used a name that did not reference the national Students for Justice in Palestine organization with which they were not affiliated. Plaintiffs do not cite a single case that suggests that they have a protected interest in using a name that is misleading. And they certainly cannot meet the high standard of showing a "clearly established" First Amendment right sufficient to overcome the individual defendants' qualified immunity.

The Court should therefore grant Defendants' Motion to Dismiss and dismiss the Amended Complaint with prejudice.[2]

[2] Plaintiffs contend that this case was originally filed in state court, so "ambiguities and gaps in the pleading that would not have mattered in state court should not be held against Plaintiffs . . . ." Pl.'s Mem. At 13. They cite no authority for this

## II. ARGUMENT

### A. Plaintiffs Fail to State a Claim Under Title VI.

Plaintiffs' claims for "race" and "national origin" discrimination fail because they fail to plausibly to allege that NJIT discriminated against them based on their "race" or "national origin." Instead, their arguments under Title VI are a recast of their First Amendment claims and/or an impermissible attempt to hold NJIT liable for isolated, non-discriminatory comments of employees. The Title VI claims should, therefore, be dismissed.

#### *i. NJIT's Conditioning Recognition of Plaintiffs' Group on an Appropriate Name is Not Discrimination*

As to any institutional actions by NJIT, Plaintiffs only argument is that NJIT discriminated against them because "the stated reason for denying the application, that NJIT does not want to associate with the ideologies of SJP, is on its face an objection to an organization whose core purpose is Palestinian liberation advocacy." Pl.'s Mem. at 15. This is a free speech claim, not a discrimination claim. Putting aside that NJIT, by Plaintiffs' own admission, did not "deny" recognition of their

---

proposition and later acknowledge that it is inaccurate and their FAC is subject to the same standard as any federal motion to dismiss. Pl.s' Mem. at 12. Plaintiffs also seem to suggest that they should be granted leave to amend if the Court rules in Defendants' favor. If Plaintiffs felt their complaint was lacking, they should have sought to amend before, not after, answering this Motion. In any event, for the reasons stated throughout, the FAC's admissions are enough to show, as a matter of law, that they cannot state a claim, so any amendment would be futile.

group, and even crediting the claim that NJIT objected to the group's ideology, objection to an "ideology" or the content of "advocacy" is not discrimination based on ***national origin***.

The First Circuit held just that in *StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 16-19 (1st Cir. 2025), where it found that use of terms like "Zionist" is not, without more, discrimination based on national origin just as expressing support of Israel is not, without more, discrimination against Palestinians. Plaintiffs have no meaningful response to the First Circuit's recent decision, and in fact seem to agree it stands for just this principle. Pl.'s Mem. at 26.

Plaintiffs suggest that "[t]hat purpose [of Palestinian advocacy] is inseparable from the race and national origin of those who advocate it," Pl.'s Mem. at 15. This is just conclusory verbiage which makes no sense since "those who advocate for it" are, by Plaintiffs' own admission, from many different ancestries and national origins. Pl.'s Mem. at 3 (noting Plaintiffs are "of Palestinian, Central Asian, and Southeast Asian origin and heritage"). Nor do they dispute that their group is open to all students regardless of race. FAC at ¶ 60(a-i). Plaintiffs cannot equate "discrimination" against their group as "discrimination" based on race, where their group is composed of many races and its purported purpose is "advocacy" on a political issue.

Finally, the fact that NJIT was willing to recognize the group under a different name only reaffirms that its decision had nothing to do with the race or national origin of the Plaintiffs. Plaintiffs say that NJIT's willingness "to recognize a neutered version of the organization, stripped of its ideological identification, does not negate the inference that the identification was itself rejected because of what it represented, and who it represented . . . ." Pl.s' Mem. at 18. This, again, is a claim of discrimination based on viewpoint, not race. In no meaningful way can insisting that Plaintiffs use a different name give rise to a plausible inference of race or national origin discrimination. That is particularly so because Plaintiffs do not dispute that NJIT did not object to the word "Palestine" in the organization's name, it only objected to using the identical name of a different group.

*ii. The Alleged Discriminatory Comments of Two Employees are Neither Race Discrimination Nor Imputable to NJIT*

Plaintiffs try to buttress their Title VI claim against NJIT by citing two isolated comments by NJIT employees which they say suggest animus about their race: namely a professor's email "likening supporters of Palestine to terrorists" and an administrator telling Plaintiffs that they could not use certain space on campus because they were not a recognized student group. This effort fails.

First, Plaintiffs admit that their claims against the individual defendants under Title VI fail because Title VI provides for liability only for ***institutions*** receiving federal financial assistance. Pl.'s Mem. at 14-15. But they overlook that Title VI

also does not permit liability based on a "respondeat superior" theory. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998) (addressing under Title IX which is interpreted co-extensively with Title VI); *Vincent C. v. Pennsbury Sch. Dist.*, No. 24-06340-PAC, 2025 U.S. Dist. LEXIS 169830 at *31 (E.D. Pa. Sept. 2, 2025) (noting that circuit courts uniformly state no respondeat superior liability under Title VI). Rather, an institution can be liable under Title VI only for its ***own*** intentional discrimination, meaning that the actions of individual employees can be tied to the institution only upon a showing that (1) "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities," *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999); (2) the school's deliberate indifference "subjects" the student to discriminatory harassment, *id.* at 645; and (3) the harassment caused by the school's deliberate indifference is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit" provided by the school. *Id.* at 632.

The two comments Plaintiffs rely on do not remotely meet this standard. As to Professor Bukiet's alleged comments allegedly likening supporters of Palestine to terrorists, that is a political opinion, not discrimination based on race. The First Circuit tells us that political opinions like this are not the same as discrimination. *StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 16-19 (1st Cir.

2025). The alleged comments speak to supporters of Palestine, not Palestinians, and many of the Plaintiffs are not Palestinian.

And, in any event, Plaintiffs do not dispute that the comments were not directed at them. Defendants provided ample support in the Opening Brief that isolated comments, particularly those involving a political opinion, are not sufficiently severe, pervasive and objectively offensive so as to be actionable under Title VI, and Plaintiffs do nothing to rebut this showing.

The allegation that Ms. Wilson "screamed" at Plaintiffs that they were "not entitled to anything" from NJIT is even weaker. The comments are not framed in terms of race at all nor do they remotely suggest racial animus, particularly where the Plaintiffs are of many national origins. And even if, in theory, a single incident could create a hostile environment, as a matter of law (1) these benign comments are not sufficiently severe, pervasive and objectively offensive to create a hostile environment and (2) Plaintiffs have not alleged that NJIT officials knew of the comments and were deliberately indifferent toward them.

B. Plaintiffs' State Law Claims Also Fail.

Other than offering generalized policy statements about the New Jersey Law Against Discrimination ("NJ LAD") and New Jersey Civil Rights Act being "liberally construed," Plaintiffs offer no case law nor arguments showing why their state law claims fare any better than their Title VI claims.

As to the claims against NJIT in Count One, Plaintiffs restate their belief that NJIT disagreed with their expression or message, making variants of the same arguments they made in responding to the Title VI points. For example, Plaintiffs claim that NJIT's "demand that the name be changed was . . . a demand that Plaintiffs excise the Palestinian identity from their organization as a precondition for receiving the same institutional benefit available to every other student group on campus." Pl.'s Mem. at 22. But there is no allegation that NJIT required Plaintiffs to excise the name "Palestine" from their chosen name (because it did not). And, the FAC nowhere supports the assertion in Plaintiffs' brief (nor is it true) that somehow other organizations were permitted to falsely associate themselves with an organization with which it does not belong.[3] This is also a fight about expression not about race or national origin.

As to the claims against the individual defendants, just as in their Title VI analysis, they fail to explain how any conduct by these individuals was either based

[3] Numerous portions of Plaintiffs' Brief take liberties with what is actually pleaded in the FAC. For example, on Page 22 of their brief Plaintiffs assert: "NJIT recognized other student organizations, including organizations affiliated with national networks and controversial advocacy positions, without subjecting their names to scrutiny comparable to what SJP-NJIT endured." FAC "Facts ¶¶ 7, 50." Pl.s' Mem. at 22. Neither Paragraph 7 nor Paragraph 50 of the FAC say any such thing. There is not a single allegation anywhere in the FAC that provides an example of a student group who was allowed to use the name of a national organization with which they were not, in fact, affiliated and NJIT is aware of no such example.

on their national origin or sufficiently severe to create a claim under New Jersey Law.[4]

The claim against Defendant Jones in Count Two just duplicates the claim that NJIT did not recognize their group. It fails for the same reasons as does Count One. The Claim against Wilson in Count Three fails because, as explained above in discussing the Title VI claim, her comments were neither discriminatory nor severe and/or pervasive harassment.[5]

---

[4] As shown in Defendants' Opening Brief, supervisory individual employees can be liable under the NJ LAD only on an aiding and abetting theory and non-supervisory employees cannot be liable at all. Def.'s Op. Br. at 14. Plaintiffs agree that this principle is true in the context of an employment discrimination case, but suggest, without any authority on point, that the principle may not apply in public accommodation cases. Yet courts have applied the same "aiding and abetting" rule to discrimination in cases involving places of public accommodation. *K.J. v. J.P.D.*, 659 F. Supp.3d 471, 477-78 (D.N.J. 2023) (analyzing public accommodation discrimination theory against individual employee under aiding and abetting theory and dismissing claim where no underlying violation by employer); *see also Mosley v. Egg Harbor City*, No. 22-6489 (KMW-EAP), 2026 WL 884772, at *8 (D.N.J. Mar. 31, 2026) (applying the rule in a public accommodation NJLAD case that an individual may only be liable based on an aiding and abetting theory).

[5] Neither of the cases Plaintiffs cite for the proposition that Wilson's comments are sufficiently severe under the NJ LAD help them. While *Lehmann v. Toys 'R' Us*, 132 N.J. 587, 607 (1993) stated that, under New Jersey Law, it was theoretically possible for a single incident to create a hostile environment, it noted that "it will be a rare and extreme case in which a single incident will be so severe." *Taylor v. Metzger*, 152 N.J. 490 (1998) involved a supervisor utilizing an outrageous racial slur at an employee, not someone telling student they cannot use certain space reserved for recognized student groups. It should also be noted that, to the extent Plaintiffs also cite these comments in support of their Title VI claim against NJIT, under federal law, the standard is more stringent, and it is doubtful that a single incident is sufficient. *Davis*, 526 U.S. at 652-53 ("Although, in theory, a single

As to Count Four against Defendant Bukiet, the claims fail on the merits for the same reasons stated above – they are neither discrimination based on race nor severe or pervasive conduct directed at the Plaintiffs.[6] The claim is also time barred for the reasons stated in Defendants' Opening Brief. Plaintiffs invoke the "continuing violation" exception to the statute of limitations, but this is a claim against Bukiet individually, and there is no suggesting that *Bukiet* engaged in any discriminatory conduct during the limitations period, nor any suggestion that anything during the limitations period is remotely connected to him. That distinguishes this case from *Shepherd v. Hunterdon Development Ctr.*, 174 N.J.1 (2002) cited by Plaintiffs. *Id.* at 21 (relying on "individual incidents common to the same two supervisors and related to the same basic subject . . . .").

instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level . . . .").

[6] Plaintiffs try to avoid *Landau v. Corporation of Haverford College*, 780 F. Supp.3d 548 (E.D. Pa. 2025) by arguing that even if the comments were not directed at them, "[w]hether Plaintiffs had actual knowledge of Bukiet's statements is a factual question . . . ." Pl.s' Mem. at 25. But the Plaintiffs do not cite to any allegation in the FAC where they ***plead*** they were aware of them. The issue is also academic because even if Plaintiffs were aware of the comments, as a matter of law they could not have created a hostile environment for them based on race or national origin, particularly where many of the Plaintiffs are not even Palestinian.

C. Plaintiffs' First Amendment Claims Under Section 1983 Fail

*i. Plaintiffs Cannot Sue NJIT Under Section 1983*

As explained in Defendants' Opening Brief, NJIT is an "arm of the state" and thus not a "person" capable of being sued under Section 1983. Rather than address the substance of this argument, Plaintiffs suggest that the issue involves factual inquiries that cannot be decided on a Motion to Dismiss. But the primary case both sides rely upon, *Maliandi v. Montclair State Univ.*, 845 F.3d 77 (3d Cir. 2016) was decided on a Motion to Dismiss. And the determinative factors upon which the Court relied were not "a developed factual record" as Plaintiffs' contend, Pl.s' Mem. at 29, but statutory references explaining the nature of the University, just as NJIT has relied upon in its Opening Brief.

Plaintiffs also claim that they can still bring claims against NJIT for prospective injunctive relief. But, as Defendants explained in their Opening Brief (and Plaintiffs do not dispute), none of the Plaintiffs in this lawsuit are current students at NJIT and thus they do not have standing to sue for injunctive relief. In any event, any claim against NJIT would fail for the same reasons the claims against the individual defendants fail, as explained below.

*ii. Defendants Did Not Violate any First Amendment Rights, Never Mind Clearly Established Rights Necessary to Overcome Qualified Immunity*

Plaintiffs' First Amendment based claims fail because they do not allege that they were denied the ability to meet, to organize, or to say what they wanted.

Plaintiffs make various claims that NJIT did not "like" certain aspects of their group, their ideology or the national Students for Justice in Palestine organization. But ultimately it is undisputed that, whatever NJIT or its officials may have thought or believed, the only action they took was to condition formation of the Group on not using the name "Students for Justice in Palestine, NJIT Chapter" because it falsely suggested that the group was associated with the national organization.

Plaintiffs maintain that the individual defendants violated a "clearly established" constitutional right because the Supreme Court in *Healy v. James*, 408 U.S. 169 (1972) "held that a public university's denial of recognition to a student organization because of the group's political affiliation and viewpoint violated the First Amendment." Pl.'s Mem. at 32. But this misunderstands the nature of the "clearly established" inquiry because it frames the question too broadly: NJIT did not deny Plaintiffs' request to form the group, instead they placed a condition on it. The question, then, is whether the ***condition*** that was placed on recognition is unconstitutional.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). "This

inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, (2021) (emphasis supplied) (quoting Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam)) (internal quotation marks omitted). "Therefore, in this case, the Court may not define the right in broad terms, such as 'a right to adequate medical care' or 'a right not to be subjected to deliberately indifferent medical care.'" *Daley v. Pa. Dep't of Corrections*, 1:20-CV-00023-SPB, 2024 U.S. Dist. LEXIS 143458 at *64 (W.D. Pa. Aug. 7, 2024). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" Id. at * 65 (citation omitted).

Thus, the question is not the infinitely broad question of whether a public official can refuse to recognize a student group because it disagrees with its message. Instead, the question is whether Plaintiffs have a clearly established right to use a particular name, when that is already in use by another organization. *Estep v. Mackey*, 639 Fed. Appx. 870, 873 (3d Cir. 2016) ("In this case, the District Court defined the right at issue as the Fourth Amendment right to be free from the excessive use of force. This formulation lacks the required level of specificity and does not address the question that needs to be answered in this context because it does not describe the specific situation that the officers confronted.").

Defendants showed in their Opening Brief that the name "Students for Justice in Palestine, NJIT Chapter" is misleading– it suggests that this group is a "Chapter" of the national organization Students for Justice in Palestine, when it is not. Defendants provided ample authority that schools have the right to regulate student speech that is misleading, ranging from Supreme Court precedent concerning student speech to specific cases in which schools were permitted to discipline misleading speech. ECF No. 5-1 ("Def.'s Op. Br.") at 27-29. Plaintiffs have no meaningful response to these cases, other than to suggest – without logic or reasoning – that there is some "leap" between cases involving student discipline and recognition of a student organization. There is no such leap. There is no meaningful, doctrinal distinction between a school's ability to discipline misleading speech and its ability to otherwise regulate it, including by declining recognition of a group using a misleading name.

Plaintiffs cite no case law of their own to refute that offered by Defendants. That failure is dispositive. "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *D.C. v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018). In other words, "[t]he rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust 'consensus of cases of persuasive authority.'" Id. (internal citations omitted). If Plaintiffs cannot muster a single case to support the proposition that insisting on a

student group's use of a name that is not already in use violates the Constitution, then one can hardly say that every reasonable official would have known such a rule existed.

Because the "right" Plaintiffs claim is not clearly established, they have no claim against the individual defendants. And because the "right" in fact does not exist at all, there is no conceivable claim against any defendant (even if NJIT were subject to such a claim).

## III. CONCLUSION

Accordingly, for the reasons set forth herein, Defendants respectfully request that this Court dismiss the First Amended Complaint in its entirety with prejudice.

Dated: June 17, 2026

Respectfully submitted,

**TROUTMAN PEPPER LOCKE LLP**

By: */s/ Michael E. Baughman*
Michael E. Baughman, Esq.
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
215.981.4964
Michael.Baughman@troutman.com

*Attorneys for Defendants New Jersey Institute of Technology, David Jones, Marybeth Boger, Matthew Golden, Andrew Christ, Latosha Wilson, Bruce Bukiet, Teik Lim, Kathryn Hageman, and Michael Davis*